IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| FLORENCIO N. VILLANUEVA, | § § § | |
| *Plaintiff,* | § § | SA-23-CV-00260-ESC |
| vs. | § § § | |
| COMMISSIONER OF SOCIAL SECURITY, | § § § | |
| *Defendant.* | § § | |

### **ORDER**

    This order concerns Plaintiff Florencio N. Villanueva's request for review of the administrative denial of his application for supplemental security income ("SSI") under Title XVI. 42 U.S.C. §§ 405(g), 1383(c)(3). This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Order pursuant to 28 U.S.C. § 636(c)(1), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#11].

    After considering Plaintiff's Opening Brief [#12], Defendant's Brief in Support of the Commissioner's Decision [#15], Plaintiff's Reply Brief [#17], the transcript ("Tr.") of the Social Security Administration proceedings [#6], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, the parties' oral arguments at the Court's hearing, and the entire record in this matter, the Court concludes that the Administrative Law Judge failed to create a logical bridge between the medical evidence, his findings, and the ultimate determination that Plaintiff is capable of performing medium work with frequent bending and stooping. This error was not harmless. The undersigned will therefore vacate the

1

Commissioner's decision finding Plaintiff not disabled and remand this case for further proceedings consistent with this opinion.

## I. Legal Standards

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether: (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability. *Id.* A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the administrative law judge's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). The Court may not reweigh the evidence or substitute its judgment for that of

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not the Court, to resolve. *Id.* While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

## II.  Factual and Procedural Background

Plaintiff Florencio N. Villanueva's filed his application for SSI in February of 2021, alleging disability beginning July 23, 2020, based on back, hand, wrist, and arm problems. (Tr. 226, 251.) The records reflect that Villanueva fell down the stairs in 2011, which has caused back pain accompanied by numbness and tingling down his legs. (Tr. 329.) Villanueva also suffered a left forearm laceration in 2013 from a grinder, which resulted in nerve damage to his thumb and index finger of his left hand. (Tr. 329.) At the time of his SSI application, Villanueva was 56 years old, an individual of advanced age under the governing regulations. (Tr. 252.) Villanueva has a limited ninth-grade education and a history of working as a laborer for carpet and tile companies. (*Id.*)

The medical records in this case are extremely limited. In June 2021, Villanueva had a consultative examination with Dr. Thomas Pfeil as part of SSA's evaluation of his claim. (Tr. 329–31.) At the examination, Villanueva stated that he frequently drops items due to numbness in his left hand. (Tr. 329.) Regarding his back pain and radiculopathy, Villanueva stated that the pain "occurs off and on"; he takes over the counter medication with some benefit; he can only lift and carry five pounds; and he has limitations as to bending and stooping, as well as standing and walking for long periods. (*Id.*) Dr. Pfeil's assessment describes Villanueva as having a normal gait and station, being in no acute distress, ambulating independently without an assistive

device, being able to stand on his heels and toes, but having slight unsteadiness with tandem walking. (Tr. 330.) Regarding the issue of bending and stooping currently before the Court, Dr. Pfeil observed Villanueva as being unable to bend all the way over and get back up again due to pain in his low back, but having the ability to squat all the way down and stand up. (*Id.*) Villanueva tested negative on a straight leg raise test, had normal grip strength in both hands, and normal fine finger mobility. (Tr. 331.) However, Villanueva had some decreased sensation of his left thumb and index finger, and Dr. Pfeil found tenderness in his lumbar spine during palpation. (*Id.*) Ultimately, Dr. Pfeil assessed Villanueva as having "limitations to lifting and carrying more than five to 10 pounds, bending and stooping" and recommended he "use caution if working with hot or cold substances due to the risk of thermal injury." (*Id.*)

Villanueva referred himself for a neurosurgical evaluation in June 2022 (one year later) with Osama Ahmed of the Brain and Spine Institute of San Antonio. (Tr. 338–40.) In this appointment, Villanueva described worsening pain at a level of 10 out of 10, which was causing difficulties with his activities of daily living, walking, bending, and performing work duties. (Tr. 338.) Villanueva explained that he had not yet undergone physical therapy, pain management interventions, or further testing and was treating his pain with Tylenol and ibuprofen. (*Id.*) Villanueva was also observed in this appointment to ambulate without assistance and to have normal fine motor coordination and a normal gait. (Tr. 338–40.) However, he tested positive in the straight leg test on the right. (Tr. 340.) He was prescribed Robaxin for muscle tightness and referred for an MRI and physical therapy. (Tr. 341.) Villanueva had both an x-ray and an MRI of the lumbar spine the following week, both of which revealed mild to moderate degenerative disc disease. (Tr. 342–44.)

The remaining medical records are from Villanueva's physical therapy appointments in July and August 2022; Villanueva attended physical therapy twice a week for six weeks. (Tr. 346–371.) Villanueva explained at the first appointment that he has been suffering from increasing back pain for ten years but was just now able to afford physical therapy because he finally has access to health insurance. (Tr. 366.) His stated treatment goals were to be able to walk more than a city block with less pain to the lower back and to address his difficulties standing and walking. (*Id.*) Villanueva was tested at this initial appointment for lumbar flexion, extension, right rotation, left rotation, right side bending, and left side bending. (Tr. 367.) Pertinent to his ability to bend and stoop, Villanueva could only perform flexion at a 25% rate and extension at a 10 % rate due to pain. (*Id.*) The physical therapist also noted increased pain in flexion when standing and lying down. (*Id.*) No other specific tests appear in the physical therapy records recording the specific rate of improvement, but within a few weeks, Villanueva reported a general decrease in his pain symptoms and was observed to be progressing well towards his goals. (Tr. 355, 360–61.) At several appointments, Villanueva reported not having any pain. (Tr. 350, 352, 354.)

Villanueva's application was denied initially in July 2021, and again upon reconsideration in May 2021. (Tr. 87–94, 97–101.) In both of these decisions, Disability Determination Services ("DDS") concluded that Plaintiff did not suffer from any severe medically determinable impairments and was therefore not disabled. (Tr. 92, 99.) Following the denial of his claim, Villanueva requested an administrative hearing. Villanueva and his attorney attended the administrative hearing before ALJ Dwight Wilkerson on August 23, 2022. (Tr. 38–66.) Villanueva and vocational expert ("VE") Donna Johnson provided testimony at the hearing. (*Id.*) Villanueva testified regarding his physical therapy treatment, described his hand issues

(numbness and difficulties gripping due to nerve damage), and estimated that he can still only stand for 15 minutes and walk for about 10 minutes at a time due to pain and numbness. (Tr. 49–53.)

The ALJ issued an unfavorable decision on November 23, 2022. (Tr. 20–29.) The ALJ found that Villanueva met the insured-status requirements of the SSA and applied the five-step sequential analysis required by SSA regulations. At step one of the analysis, the ALJ found that Villanueva has not engaged in substantial gainful activity since February 12, 2021, the date of application. (Tr. 22.) At step two, the ALJ found Villanueva to have the severe impairments of degenerative disc disease and left forearm laceration. (*Id.*) At step three, the ALJ found that Villanueva's impairments do not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations so as to render Villanueva presumptively disabled. (Tr. 22–23.)

Before reaching step four of the analysis, the ALJ found Villanueva retains the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 416.967(c), meaning Villanueva can lift and/or carry 50 pounds occasionally and 25 pounds frequently and can stand, walk, and sit six hours in an eight-hour workday. (Tr. 23.) The ALJ imposed the following additional postural limitations: Villanueva can only occasionally climb ladders, ropes, or scaffolds; can frequently climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; and is limited to frequent handling and fingering with the left, non-dominant, upper extremity. (*Id.*)

At step four, the ALJ found that Villanueva is unable to perform his past relevant work as a construction worker and brush laborer. (Tr. 27.) At step five, the ALJ concluded that considering Villanueva's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Villanueva can perform, such as laundry

worker and bagger. (Tr. 28–29.) Accordingly, the ALJ determined that Villanueva is not disabled for purposes of the Act, and therefore not entitled to receive SSI. (Tr. 29.)

Villanueva requested review of the ALJ's decision, but his request for review was denied by the Appeals Council. (Tr. 1–6.) Villanueva thereafter filed the instant case, seeking review of the administrative determination.

### III. Analysis

Villanueva argues the ALJ committed reversible error in failing to create a logical bridge between the medical evidence, his own findings, and the RFC determination that Villanueva is capable of medium work with frequent bending and stooping. Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). According to SSR 83-10, "[t]he considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.)" Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983). This ruling defines "frequent" as occurring "up to two-thirds of a workday," which amounts to approximately 6 hours of an 8-hour workday." *Id.*

The medical records contain some evidence related to Villanueva's ability to bend and stoop. Villanueva testified at the ALJ's hearing that he is only able to partially bend at the waist due to issues with his lumbar spine. (Tr. 53.) The consultative examiner, Dr. Pfeil, personally observed Villanueva's inability to fully bend and as having tenderness to palpation at the lumbar spine and decreased range of motion of the lumbar spine and concluded that Villanueva has "limitations" as to "bending and stooping." (Tr. 331–32.) Physical therapy records also

7

document Villanueva's limited range of motion in the flexion of his lumbar spine (25%) at the initial evaluation, as well as restricted hip flexibility, hip weakness, positive straight leg test, tenderness to palpation, and loss of mobility in all joints of the lumbar spine.  (Tr. 367–69.)  The MRI of record documents degenerative disc disease and disc bulging of the lumbar spine.  (Tr. 342.)

As required by SSA's rules and regulations, the ALJ considered Dr. Pfeil's medical opinion for persuasiveness.  *See* 20 C.F.R. § 416.920c.  The ALJ found Dr. Pfeil's opinion about Villanueva's limitations as to bending and stooping to be generally persuasive.  (Tr. 27.)  The ALJ stated the following as his reason for crediting this portion of Dr. Pfeil's opinion: "Though the doctor's explanation was vague, the limitation was supported by and consistent with the objective evidence. On examination, the claimant was unable to bend all the way over and get back up, and his imaging revealed degenerative disc disease."  (*Id.*)  Despite this finding, the ALJ found Villanueva capable of performing work at the medium exertional level and specified that Villanueva can engage in frequent stooping while performing that work.  (Tr. 23.)  This translates to a finding that Villanueva can repeatedly bend and stoop not just on occasion but for up to six hours of an eight-hour workday, while lifting 25 to 50 pounds, on a regular and continuing basis.  Villanueva argues the ALJ failed to explain his reasons for simultaneously finding Villanueva to have limitations in bending and stooping while also concluding he could engage in bending and stooping to almost an unlimited capacity.

To constitute substantial evidence to support a denial of benefits, the ALJ "must build an accurate and logical bridge between the evidence and the final determination."  *Price v. Astrue*, 401 Fed. App'x 985, 986 (5th Cir. 2010) (per curiam).  The ALJ's opinion contains a blatant contradiction—an endorsement of a medical opinion as persuasive regarding limitations as to

bending and stooping and a finding of an ability to bend and stoop for two-thirds of the workday. The ALJ's opinion does not address or reconcile this inconsistency.

The Commissioner does not adequately respond to this issue in her responsive brief. Instead, the Commissioner generally argues that the ALJ's finding that Villanueva is able to perform a reduced range of medium work is supported by substantial evidence. The Commissioner cites evidence of Villanueva's ability to ambulate without an assistive device, variable back pain, normal gait and station, ability to sit comfortably on the examination table without evidence of pain, normal fine motor coordination, and normal range of motion in his bilateral upper and lower extremities. None of this evidence relates to the ability to bend and stoop. The Commissioner also discusses the part of Dr. Pfeil's opinion regarding the limitation to lifting and carrying no more than ten pounds. This is also non-responsive to the issues raised in Villanueva's brief.

Arguably, the fact that Villanueva was noted to show some improvement after taking Robaxin, a muscle relaxant, and with physical therapy is some evidence that Villanueva may have greater capabilities in bending and stooping at this point than he did during the consultative examination in June 2021 and at his initial physical therapy evaluation in July 2022. The Commissioner notes this evidence in her brief, and the ALJ also summarized this evidence in his opinion, noting that Villanueva had demonstrated improved lumbar range of motion, improved tolerance for lumbar extension and flexion and, at some appointments, did not report having pain or soreness. (Tr. 25, 351, 361.) But aside from Dr. Pfeil's opinion and the initial physical therapy evaluation, there is no other evidence in the record addressing Villanueva's specific capabilities as to stooping and bending.

Moreover, although there was undoubtedly improvement from physical therapy, the ALJ does not connect the dots between this general improvement and his conclusions as to Villanueva's ability to perform medium work with frequent bending and stooping. The physical therapy records mostly focus on improvement of hip strength, while simultaneously noting that lumbar range of motion exercises at times had to be halted due to soreness and tenderness on palpation. (Tr. 359, 360, 363.) However, on Villanueva's second to last appointment in the record, his physical therapist noted that he demonstrated 50% range of motion in lumbar extension and 75% of range of motion in lumbar flexion. (Tr. 355.) The ALJ does not cite this specific record, instead just generally noting improved lumbar range of motion. But again, the Court is left guessing as to whether the ALJ's brief summary of the physical therapy records and the notation of less pain and increased lumbar range of motion is the reason for choosing not to impose more limitations on stooping and bending or whether the ALJ intended to include more limitations in this regard but mistakenly did not. The ALJ credited Dr. Pfeil's opinion, finding limitations in bending and stooping, and did not explain how he ultimately concluded that Villanueva could preform these acts frequently.

This error was not harmless. An error is not harmless if it affected Deacon's substantial rights and the outcome of the proceedings. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). *See also Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) ("Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err."). Here, if Villanueva is unable to meet the physical demands of medium exertion work, he would be found disabled as a matter of law under the Medical-Vocational Guidelines. 20 C.F.R. Part 404, Subpart P, App'x 2, § 202.00(c). Villanueva is an individual of advanced age who can no longer perform vocationally relevant past work and who has a history

of unskilled work experience.  (Tr. 63.)  When limited to light work, such individuals are considered disabled.  20 C.F.R. Part 404, Subpart P, App'x 2, § 202.00(c).  Accordingly, had the ALJ imposed limitations on bending and stooping that foreclosed the ability to perform medium work, the outcome of the proceedings would have been different.

It is conceivable that there could be jobs performed at a medium exertional that do not require frequent bending and stooping—possibly even the jobs of laundry worker and bagger Villanueva was found capable of performing here.  However, the ALJ never questioned the VE at the hearing regarding bending and stooping, and there is therefore no testimony or other evidence before the Court establishing as much.  It is the burden of the Commissioner to show that Villanueva can perform other work in the national economy at step five of the sequential analysis.  *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  The Commissioner has not satisfied her burden to establish that, in spite of possible bending and stooping limitations, the result of the administrative proceedings would have been the same.  The Court will therefore remand for further proceedings to address Villanueva's limitations as to bending and stooping and how they affect the RFC determination and his capacity to perform other work in the national economy.

Finally, the Court notes that Villanueva also takes issue with the ALJ's treatment of his subjective complaints, particularly Villanueva's inability to bend.  The Court need not separately address this issue here.  On remand, the Court should again evaluate Villanueva's subjective complaints, applying the two-step "objective-subjective" process set forth in the regulations and governing law.  *See* 20 C.F.R. §§ 404.1529(a), 416.929; *see also* Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017); *Salgado v. Astrue*, 271 Fed. App'x 456, 458 (5th Cir. 2008) (per curiam).  In doing so, the ALJ

should carefully consider the following factors: (1) daily activities; (2) location, duration, frequency and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (5) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (6) any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) other factors concerning your functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

## IV.  Conclusion

Based on the foregoing, the Court finds that the ALJ erred in failing to explain his reasons for assessing Villanueva with the ability to perform medium work—work involving frequent bending and stooping.  Therefore, the Commissioner failed to satisfy her burden to demonstrate that Villanueva is capable of performing other work in the national economy despite his limitations.  Because this error was not harmless,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that Villanueva is not disabled is **VACATED** and this case **REMANDED** for further fact-finding consistent with this opinion.

SIGNED this 21st day of December, 2023.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE